IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. NO. 13-234-CG |
| | ) | |
| DESHAN T. WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Deshan T. Walker got pulled over last August with a gun and marijuana in his car, and too-dark tinting on his windows. On the window-tint violation, Walker got off with a warning. But for the drugs and the gun, Walker now stands accused of distributing a controlled substance and possessing a firearm in furtherance of a drug trafficking crime. The matter comes before the court on Walker's motion to suppress (Doc. 18), on which the court held an evidentiary hearing on January 2, 2014. For reasons that follow, Walker's motion is due to be granted.

**I. Background**

Walker's troubles began when Alabama State Trooper Richard Pittman saw something suspicious about Walker's passing SUV. Or rather, it was what Trooper Pittman did not see that raised an alarm—he was unable to make out Walker's race or gender due to heavily tinted windows. Trooper Pittman stopped the SUV and used a device to test the tint on the windows. Trooper Pittman was right; Walker's windows were too dark.

Trooper Pittman asked Walker to get out of the car and walk to the patrol vehicle. On that short walk, Trooper Pittman asked if Walker was carrying any weapons. Walker said that he was carrying a pistol with a permit. Trooper Pittman secured the pistol and asked Walker to wait in the passenger seat of the patrol vehicle. Walker did as he was asked.

While Walker waited, Trooper Pittman prepared a warning citation for the tint violation. Meanwhile, Walker fidgeted and sweated profusely, while Trooper Pittman made small talk. When Trooper Pittman finished writing the citation, he returned Walker's driver's license and insurance card. Then Trooper Pittman asked if Walker would mind answering a few more questions. Walker agreed.

Trooper Pittman asked if there were any weapons or bombs or narcotics or cocaine or heroin or methamphetamines in Walker's car. To each of those questions, Walker answered, "No." (Tr. 12–13 (Doc. 28).) But when Trooper Pittman asked if there was any marijuana in the car, Walker hesitated and said, "Uh, naw." (Tr. 12:21.)

Sensing criminal activity afoot, Trooper Pittman asked Walker to consent to a search of his vehicle. Walker declined, adding that "he was just trying to get where he was going." (Tr. 15:13-14.) Trooper Pittman asked again, and again Walker refused.

But Trooper Pittman wasn't quite ready to let Walker go. He explained that he was a certified canine officer and that he was going to have his dog do a free-air

sniff around Walker's vehicle. If the dog alerted, then Trooper Pittman would search the vehicle. If not, Walker would be free to go. (Tr. 37:10-11.) The dog alerted twice and Trooper Pittman called for backup. That's when they found the drugs.

## II. ANALYSIS

Walker's first claim is that Trooper Pittman stopped Walker without probable cause. That's obviously wrong. Walker's illegally tinted windows were out in the open for everyone to see, and Trooper Pittman has written hundreds of citations for window-tint violations. Trooper Pittman could tell just by looking at Walker's windows that the tint was too dark, which provided probable cause for the stop. *See U.S. v. Leonard*, 356 Fed. App'x. 231, 237 (11th Cir. 2009) (finding probable cause where an officer observed that a car had window tinting "so dark that he could not discern how many individuals were inside of the car").

But Walker's second objection has merit. He says that even assuming his detention was initially constitutional, it went on for too long in violation of *U.S. v. Pruitt*, 174 F.3d 1215 (11th Cir. 1999). According to *Pruitt*, a traffic stop "must last no longer than is necessary to effectuate the purpose of the stop." *Id.* at 1220. To prolong a stop beyond that point, one of two conditions must be met: (1) the officer reasonably suspects "illegal activity has occurred or is occurring," or (2) the "initial detention has become a consensual encounter." *Id.* at 1220. At the time that Trooper Pittman had his dog perform the free-air sniff, neither of those conditions was met.

The question of reasonable suspicion is a fairly straightforward one. After Trooper Pittman let Walker off with a warning for the tint violation, the only

suspicious circumstances were Walker's nervousness, his perspiration, and the answer he gave when Trooper Pittman asked about marijuana—a hesitant "naw" instead of a quick "no." At best, those circumstances might give rise to a hunch that Walker might be hiding something. But they do not support a reasonable suspicion of illegal activity. *Cf. U.S. v. Perkins*, 348 F.3d 965, 971 (11th Cir. 2003) ("In this Circuit, we have required more than the innocuous characteristics of nervousness, a habit of repeating questions, and an out-of-state license for giving rise to reasonable suspicion.").

The question of consent is a bit trickier. At the end of the traffic stop, Trooper Pittman asked Walker to answer a few question. Walker agreed to do so. At that point the traffic stop transformed into a consensual encounter, so the Fourth Amendment was not implicated. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." (citation omitted)).

But the nature of the encounter changed when Trooper Pittman asked to search Walker's car. Walker refused to consent to the search, saying that "he was just trying to get where he was going." (Tr. 15:13-14.) But instead of letting Walker go, Trooper Pittman explained what was going to happen next: He was going to have his dog sniff the air around Walker's car, and if the dog did not alert, Walker would be free to go. At that point, an objectively reasonable person in Walker's position would not think that he was free to go, so the consensual encounter was over. *See I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) ("An initially consensual

encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). Trooper Pittman's explanation that Walker would be free to go if the dog did not alert not-so-subtly implied that Walker could not leave until the dog was finished sniffing. And even without that statement, the act of getting the police dog out to search Walker's vehicle sent the message that Walker was not free to go. The Sixth Circuit has held that "[t]he very act of bringing [a dog] out to sniff [a] vehicle[ ] tells a reasonable person we are investigating you for drugs and you may not move [your] vehicle[] until we are through," *U.S. v. Buchanon*, 72 F.3d 1217, 1225 (6th Cir. 1995) (quotations omitted). The court reaches the same conclusion here. *See also* 4 Wayne LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a) (5th ed. 2013) (noting that an encounter becomes a seizure when an officer "engages in conduct a reasonable person would view as threatening or offensive," which includes "bringing a drug-sniffing dog toward [a] person or his property.") Beginning when Trooper Pittman explained that he was going to perform the free-air sniff, the consensual encounter was over; Walker was detained.

And despite the government's contrary urgings, the court finds that Walker did not consent to the free-air sniff. Trooper Pittman never asked Walker's permission to let the dog sniff around the car; he "explained" to Walker what would happen next, offering no choice on the matter. The court is unconvinced that

Walker's response to that explanation—"okay"—was assent. Instead, the court finds that Walker's response was nothing "more than a mere submission to a claim of lawful authority." *Kaupp v. Texas*, 538 U.S. 626, 631 (2003) (finding no evidence of consent when a police officer said "we need to go and talk" and the defendant answered "[o]kay").

All this means that Walker was illegally detained at the time of the free-air sniff. It is therefore **ORDERED** that Walker's motion to suppress the evidence obtained as a result of that free-air sniff (Doc. 18) is **GRANTED**.

**DONE** and **ORDERED** this 24th day of January, 2014.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE